**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SANDY S. TRENT, etc., et al.,

            Plaintiffs,

v.                                        Case No. 3:06-cv-374-J-32HTS

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., etc.,

            Defendant.

**ORDER**[1]

**I.    BACKGROUND**

This is a putative class action lawsuit filed by nine named plaintiffs against Mortgage Electronic Registration Systems, Inc. ("MERS") based on its actions in foreclosing upon mortgages in Florida. Plaintiffs seek relief under two Florida statutes, the Florida Consumer Collection Practices Act ("FCCPA") (Count I) and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II). The Second Amended Complaint seeks statutory damages and injunctive and declaratory relief under the FCCPA and declaratory and injunctive relief under the FDUTPA.[2]

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2] MERS removed plaintiffs' original complaint from state to federal court pursuant to 28 U.S.C. § 1332(d), as enacted by the Class Action Fairness Act of 2005. (Docs. 1 & 2). Plaintiffs' filed an Amended Complaint prior to MERS filing a responsive

Plaintiffs seek to certify two separate classes, one for the FCCPA claim and one for the FDUTPA claim. The proposed definition of the FCCPA class is:

> All individuals in the State of Florida who received a "communication," as defined in F.S. § 559.55(5), from MERS, its agents or its legal counsel within two (2) years of the filing of this lawsuit, which communication stated that MERS is a creditor on the individual's mortgage loan obligation.

(Doc. 39-2, Amend. Comp., ¶ 20). The proposed definition of the FDUTPA class is:

> All individuals in the State of Florida who received a "communication," as that term is defined in F.S. § 559.55(5), from MERS, its agents and/or its legal counsel within four (4) years of the filing of this lawsuit, which communication stated that MERS is a creditor on the individual's mortgage loan obligation.

(Id. at ¶ 21).

The FCCPA count essentially alleges that MERS "engaged in a pattern and practice of illegal debt collection practices" in violation of Fla. Stat. § 559.72(9). MERS' alleged *ultra vires* acts include, *inter alia*: (1) sending communications to residential mortgage borrowers identifying MERS as the creditor and/or owner of their mortgage notes when MERS knew it was not a creditor entitled to collect debts or otherwise employ legal process to enforce mortgage obligations; (2) failing to register

---

pleading. (Doc. 10). MERS moved to dismiss the Amended Complaint. (Doc. 14). The Court held oral argument on that motion. (Doc. 33). Prior to the Court's ruling on the motion to dismiss, plaintiffs moved for leave to file a Second Amended Complaint (Doc. 39), which the Court granted (Doc. 43). MERS then moved to dismiss the Second Amended Complaint (Doc. 46) and the Court held oral argument (Doc. 57).

as a consumer collection agency; (3) failing to obtain a license for mortgage lending prior to performing mortgage lending services; (4) failing to register with the State of Florida as a debt collector pursuant to Fla. Stat. § 559.553; and (5) failing to pay the appropriate statutory registration fee required of consumer collection agencies under Fla. Stat. § 559.555.  (Id. at ¶¶ 26(a)-(f), 42, 43, 50, 56 & 59).

The allegations in the Count II FDUTPA claim largely mirror those in the FCCPA claim.  (Id. at ¶¶ 62(a) - (l)).  Plaintiffs further allege that MERS violated FDUTPA because it engaged in the unlicensed practice of law and used deceptive means to collect debts owed by class members on residential mortgage loans in violation of the Federal Debt Collection Practices Act, specifically 15 U.S.C. §§ 1692e(10) & 1692j.  (Id.).

In its motion to dismiss, MERS asserts several arguments.  First, MERS raises Florida's litigation privilege positing that exhibits attached to a mortgage foreclosure action cannot be the basis of claims under the FCCPA and the FDUTPA.  Second, foreclosing on a mortgage is not collecting on a debt, thus MERS is not engaged in illegal debt collection practices.  Third, MERS is not a debt collector under the FCCPA.  Fourth, MERS' actions do not, on their face, violate the FCCPA based on recent Florida court decisions holding that MERS has standing to foreclose mortgages in Florida.  Fifth, though plaintiffs allege that MERS engaged in certain conduct, none of that conduct violates any provision of § 559.72 of the FCCPA or any provision of the FDUTPA.  Sixth, plaintiffs are not "consumers" under the FDUTPA.  Seventh,

MERS did not engage in "trade or commerce" under the FDUTPA. Eighth, plaintiffs are prohibited from pursuing these claims in federal court because nearly all plaintiffs failed to assert them as compulsory counterclaims in their state court foreclosure actions (claim preclusion) and the plaintiff who did (Trent) is estopped from pursuing these same claims in federal court because of the rule proscribing claim splitting.

## II.     APPLICABLE STANDARD

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Castro v. Secretary of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson, 127 S.Ct. at 2200 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S.Ct. at 1964-1965 (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." Id. at 1965. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

MERS alternatively styles its motion as a motion for summary judgment against plaintiffs Trent, Meismer and Pullins and attaches certain exhibits to the motion. Fed. R. Civ. P. 12(b) allows a court to exercise its discretion to consider materials presented that are outside the pleadings and thus transform a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. The Court declines the invitation to consider MERS' motion as a summary judgment motion and will apply the standards attendant to Rule 12(b)(6).

### III.  DISCUSSION

#### A.  FCCPA

##### 1.  Litigation Privilege

In response to MERS' motion to dismiss, plaintiffs limit their FCCPA claim to pre-suit communications that the plaintiff borrowers allegedly received from MERS before foreclosure proceedings were instituted against them. Specifically, plaintiffs allege that MERS violated Fla. Stat. § 559.72(9) in causing such pre-suit communications to be sent representing it was a "creditor" of the plaintiffs. Section 559.72(9) provides:

> In collecting consumer debts, no person shall: Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some legal right when such person

-5-

knows that the right does not exist.

Fla. Stat. § 559.72(9).[3]

To the extent plaintiffs base part of their claim on communications attached to or sent with the complaint or summons in the state court foreclosure cases, such claims may implicate Florida's litigation privilege.  When addressing the litigation privilege, the Florida Supreme Court has held "[that] absolute immunity must be offered to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding."  Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994).  "The rationale behind the immunity afforded to defamatory statements [the tort at issue in prior litigation immunity cases] is equally applicable to other misconduct occurring during the course of a judicial proceeding.  Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct."  Levin,

---

[3]  Fla. Stat. § 559.77, titled "Civil Remedies", is the enabling statute that permits a private right of action under the FCCPA.  Section 559.77(1) provides: "A debtor may bring a civil action against a person violating the provisions of s. 559.72 in a court of competent jurisdiction of the county in which the alleged violator resides or has his or her principal place of business or in the county wherein the alleged violation occurred."  Section 559.77(2), again citing § 559.72, provides that "[u]pon adverse adjudication, the defendant shall be liable for actual damages and for additional statutory damages of up to $1,000...."

639 So. 2d at 608.  The Florida Supreme Court recently explored the contours of Florida's litigation privilege and its Levin holding in Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380 (Fla. 2007).

In Echevarria, the Echevarria law firm was retained by lenders to pursue foreclosure proceedings against property owners who had defaulted on their mortgages.  950 So. 2d at 381.  The Echevarria firm sent letters to the owners at the outset of the foreclosure proceedings stating that the owners were in default on their mortgages and faced foreclosure unless they reinstated the mortgages by bringing their payments current.  Id.  The basis of the complaint was that the Echevarria firm violated the FCCPA and FDUTPA by seeking excessive costs in the foreclosure proceedings for title search and examination.  Id.  The limited issue that the Florida Supreme Court addressed was whether Florida's litigation privilege applied to statutory causes of action.[4]  Id. at 383.  Citing its prior precedent in Levin, the Court held that the litigation privilege extends to all judicial proceedings, "whether based on common law, statutory authority, or otherwise."  Id. at 384 (citing Levin, 639 So. 2d at 608-09).  The Court reasoned that the immunity rule is born out of the nature of the

---

[4] In Echevarria, et al. v. Cole, 896 So. 2d 773 (Fla. 1st DCA 2004), the First District Court of Appeal held that the litigation privilege did not extend to a statutory cause of action, but was limited to common law claims.  Id. at 777.  This was in direct conflict with BOCA Investors Group, Inc. v. Potash, 835 So. 2d 273 (Fla. 3d DCA 2002).  Based on this conflict, the Supreme Court accepted jurisdiction and concentrated solely on whether the litigation privilege extends to statutory causes of action.  Echevarria, 950 So. 2d at 383, n. 1.  The Court did not address other issues briefed by the parties, such as when precisely the protections of the privilege commence.  Id.

-7-

proceeding (judicial), not the nature of the claim(s) in the proceeding (common law or statutory), and the need for "candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications... ." Id.

The Echevarria holding precludes communications attached to or made part of a foreclosure complaint from forming the basis of a FCCPA or FDUTPA claim. However, there is also a slightly different question posed here: Does a pre-suit communication (a letter sent prior to service of the complaint even if also sent with the complaint) likewise fall within the ambit of the litigation privilege? This the Echevarria majority does not answer and, in fact, expressly declines to address. See id. at 383, n. 1. After detailed review of the Echevarria decision and the unsettled state of Florida law on this issue, this Court is unprepared to extend the litigation privilege to pre-suit communications especially where, as here, the parties agree that the law does not require that these notices be sent.

### 2.     **Whether a Lawsuit is Debt Collection**

Though the main legal issue presented is the alleged deceptive or abusive nature of the pre-suit notices, the Court must first address the issue raised of whether a mortgage foreclosure action itself qualifies as a "debt collection" under the FCCPA. The Court finds that it does not.

The rationale for this finding is aptly explained in precedent interpreting the FCCPA's federal counterpart, the Fair Debt Collection Practices Act (FDCPA) - - that

-8-

is, foreclosing on a mortgage "is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing ... is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." Hulse v. Ocwen Federal Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002). Other courts, including Judge Antoon in this district, have likewise so held. See Acosta v. Campbell, 2006 WL 3804729, *4 (M.D. Fla. Dec. 22, 2006) (unpublished opinion) ("[n]early every court that has addressed the question has held that foreclosing on a mortgage is not a debt collection activity for the purposes of the FDCPA"); Beadle v. Haughey, 2005 WL 300060, *3 (D.N.H. Feb. 9, 2005) (unpublished opinion) (citing Hulse, 195 F. Supp. 2d at 1203-04); Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) (15 U.S.C. § 1692a(6), which distinguishes security enforcement and debt collection, provides that security enforcement activities fall outside of the FDCPA because they are not debt collection practices); Heinemann v. Jim Walter Homes, Inc., 47 F. Supp. 2d 716, 722 (N.D. W.Va. 1998), *aff'd*, 173 F.3d 850 (4th Cir. 1999); see also Vega v. McKay, 351 F.3d 1334, 1337 (11th Cir. 2003) (focusing on the issue of whether a lawsuit is an "initial communication" under the FDCPA and holding that it is not)[5]; McKnight v. Benitez,

---

[5] Plaintiffs argue that the Eleventh Circuit's Vega decision was based on Federal Trade Commission commentary that is now obsolete. Prior to Vega, the FTC posited that a debt collector's institution of formal legal process against a debtor is not a "communication in connection with collection of any debt, and thus does not confer section 809 notice-and-validation rights on the consumer." Federal Trade

176 F. Supp. 2d 1301, 1305-06 (M.D. Fla. 2001) (same).

While the FCCPA does not squarely address this issue and there is no Florida case directly on point, the undersigned finds no reason why the rationale espoused under FDCPA precedent should not apply with equal force to FCCPA cases. In fact, § 559.77(5) of the FCCPA provides that, when applying the provisions of the FCCPA, "great weight shall be given to the interpretations of ... the federal courts relating to the federal Fair Debt Collection Practices Act." When viewed *in toto*, the purpose and intent of the FCCPA, like the FDCPA, is to eliminate abusive and harassing tactics in the collection of debts. It is not meant to preclude a creditor or someone otherwise holding a secured interest from invoking legal process to foreclose.

A contrary holding would not only create serious constitutional concerns, such as access to courts under Article I, Section 21 of the Florida Constitution, it would also run counter to the rationale of Florida's Second and Third District Courts of Appeal in Mortgage Electronic Registration Systems, Inc. v. Azize, --- So. 2d ---, 2007 WL 517842, *1 (Fla. 2d DCA Feb. 21, 2007) and Mortgage Electronic Registration

---

Commission Staff Commentary on the Fair Debt Collection Practices Act, 53 FR 50097, 50108 (1988). However, before Vega, the FTC issued a staff opinion letter dated March 31, 2000 stating that if an attorney debt collector serves a court document upon a debtor conveying information regarding a debt, that court document is a "communication" under the FDCPA. Because the FTC opinion post-dates the 1988 FTC commentary, plaintiffs assert that the underpinnings of Vega are questionable, and thus its precedential value tarnished. While the Court notes the FTC's apparent change in direction, whether one FTC opinion letter contradicts Vega is not the controlling inquiry here. The Court still finds, like many other federal courts have, that the filing of a foreclosure lawsuit is not a debt collection activity.

Systems, Inc. v. Revoredo, 955 So. 2d 33, 34 (Fla. 3d DCA 2007), that MERS, as the holder of a promissory note secured by a mortgage, has standing to bring a foreclosure action. Thus, filing a foreclosure lawsuit is not a debt collection practice under § 559.72 of the FCCPA.

### 3. Pre-Suit Notices

The remaining and central issue is whether the pre-suit letters or notices like that sent to the Taylors and attached to the Second Amended Complaint representing MERS as a "creditor" or "owner" of the promissory note violates § 559.72(9) of the FCCPA. (Doc. 39-2, Amend. Compl., ¶¶ 15, 26(a) & (f), 30(b) & (c), 40, 50, 52, 56, 59 & Ex. A). Whether or not this precise conduct violates § 559.72(9) appears to be an issue of first impression. The Court begins by parsing the language of that statute.

Because § 559.72(9) reads in the disjunctive, there are two ways for a debt collector (assuming *arguendo* MERS qualifies as such)[6] to violate it. The debt collector can (1) "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate;" or (2) "assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9)

---

[6] Fla. Stat. § 559.55(6) provides, "'Debt collector' means any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The term 'debt collector' includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts...."

-11-

(emphasis added).  Under a plain reading, MERS could not have done the former as the structure of these transactions makes clear that the debt is legitimate and that MERS is the mortgagee and has the ability to foreclose.  Supportive of this finding are the Azize and Revoredo holdings that MERS, as the holder of the note, has standing to foreclose.  See Azize, 2007 WL 517842 at *1; Revoredo, 955 So. 2d at 34.  Thus, even taking all of the allegations in the complaint as true, MERS did not "claim," "attempt" or "threaten to enforce" a debt or obligation "that it knew was not legitimate."

The issue then becomes whether MERS, via the Marshall Watson law firm (presumably hired by MERS to foreclose), violated the latter portion of § 559.72(9) by representing itself as the "creditor to whom the debt is owed" (i.e., asserting a legal right it knows does not exist).[7]  Plaintiffs posit that because MERS is not truly a "creditor"[8] in that MERS has not extended credit and is not directly owed any money, MERS has asserted a legal right that it knows to be untrue, which is in violation of § 559.72(9).  This Court disagrees.

Subsequent to the hearing on the motion to dismiss the Amended Complaint,

---

[7]  Paragraph 1 of the September 1, 2004 letter to Rico and Veronica Taylor (which is attached to the Second Amended Complaint) provides:

> The Plaintiff MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, is the creditor to whom the debt is owed by those individuals who are obligated under the promissory note and mortgage.

[8]  Section 559.55(3) of the FCCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but does not include any person to the extent that they receive an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

-12-

the parties stipulated to the filing of an exemplar mortgage that was referred to in the Amended Complaint (now Second Amended Complaint). MERS filed the mortgage entered into by plaintiffs Bruce and Michelle Tucker. (Doc. 32).[9] The first page of the mortgage, in the "Definitions" section, discloses that:

> 'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(Doc. 32-2, p. 1). The mortgage contract further provides:

> TRANSFER OF RIGHTS IN THE PROPERTY
>
> ...For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property...
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, <u>MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.</u>

(Doc. 32-2, p. 3). (Emphasis added).

Thus, by the language in the mortgage contract, the mortgagors (plaintiffs)

---

[9] Plaintiffs having referred to the mortgage transactions in the Second Amended Complaint, and the parties having stipulated that the Court can consider it without transforming the Rule 12(b)(6) motion into a Rule 56 motion, the Court considers the mortgage.

-13-

were aware at the outset of MERS' role in the mortgage transaction. While the lender remained the "creditor" of the secured loan (Finance America, LLC on the Tucker loan), MERS obtained legal title to the note and the ability to foreclose.

The allegedly offending notice attached to the Second Amended Complaint not only refers to MERS as the "creditor," but also as the "nominee" for GMAC Mortgage Corporation (the lender). At oral argument, plaintiffs downplayed the importance of the "nominee" designation, but focused on the representation of MERS as a "creditor" as the actionable deceptive and abusive act at issue. However, plaintiffs' counsel was unable to articulate how plaintiffs were deceived or harmed by this designation. When viewing the representation made in the pre-suit notices and the transaction itself *in toto*, the Court cannot identify any root abusive conduct. In fact, MERS may actually qualify as a "creditor" under some definitions of the term. But, even if MERS is not technically a "creditor" as defined in the FCCPA, the Court views this designation at worst as a relatively harmless mistake in nomenclature, not an abusive or harassing debt collection practice. Plaintiffs simply cannot establish that the use of the term "creditor" creates some situation that legitimately prejudices a borrower or identify any harassing motive behind its use.

The language of the FCCPA confirms the statute's intent is to eradicate abusive conduct. The nineteen subsections in § 559.72, which can form the bases of private rights of action under the Act, seek to curb actions such as: (1) threats of force or violence (§ 559.72(2)); (2) threats of intentionally making misrepresentations to

damage an individual's credit (§ 559.72(3)); (3) disclosure of information affecting an individual's reputation to third parties when there is no business need to do so (§ 559.72(5)); (4) harassment of a debtor (§§ 559.72(7) & (8)); (5) the use of communications that simulate authorized legal or judicial process or that have the appearance of being authorized by a government, governmental agency or an attorney (§ 559.72(10)); (6) communications with a debtor under the guise of an attorney by using stationery of an attorney or forms only an attorney is authorized to prepare (§§ 559.72(11) & (12)); and (7) threats to publish before the general public the name of a debtor (§ 559.72(14)).  See Fla. Stat. § 559.72.  Here, communicating to a debtor prior to a foreclosure suit that MERS is a "creditor" of the debtor, even if technically not accurate, is simply not of that ilk.[10] [11]

---

[10]  The only Florida case the Court could find interpreting § 559.72(9) is Fox v. Barnett Recovery Corp., 544 So. 2d 1157 (Fla. 5th DCA 1989).  The Fox court affirmed a trial court Order dismissing a counterclaim under § 559.72(9) alleging that it was a violation of the statute for a collection agency to make the statement in a collection letter that it would "assess" a $350 attorneys' fee if it was forced to hire an attorney to foreclose on the account.  Fox, 544 So. 2d at 1158.  The court reasoned that this was not the kind of "wrongful threat within the meaning of section 559.72(9), Florida Statutes."  Id.

[11]  MERS also raises the issue that the Taylor notice attached to the Second Amended Complaint was sent by "Marshall Watson, P.A.," and not MERS; thus, the debt collector is the law firm and MERS cannot be held vicariously liable for its acts.  The Court does not reach this issue based on its holding that the representations of MERS as a "creditor" (whether from MERS or its law firm) do not violate Fla. Stat. § 559.72(9).

### 4. **Other alleged violations of the FCCPA**

The Second Amended Complaint also alleges other violations of the FCCPA - that MERS failed to register as a collection agency as required by Florida law (¶¶ 26(b) & 43), failed to obtain a license for mortgage lending prior to performing mortgage lending services (¶ 26(c)), collected consumer debts without first registering as a Florida debt collector (¶ 42) and failed to comply with § 559.715 when it obtained the right from third party mortgage note owners to collect a debt (¶ 57). However, none of these allegations fall under the purview of § 559.72. Because § 559.77 only provides a private right of action for violations of § 559.72, these remaining allegations are not actionable by these private plaintiffs.

As MERS points out, (1) § 559.565(3) charges the Attorney General with effectuating the registration requirements of an out-of-state debt collector in Florida and (2) § 559.78 enables the State Attorney to seek injunctive relief against FCCPA violators. To extend a private right of action to acts other than those proscribed under § 559.72 would impermissibly alter the unambiguous language of § 559.77. See Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) ("[C]ourts ... are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power") (citation omitted). The remaining allegations in the Second Amended Complaint alleging that MERS violated sections of the FCCPA (other than § 559.72) are due to be dismissed with prejudice as no such claims are

-16-

available under the FCCPA.

### B.     FDUTPA

In the FDUTPA claim, plaintiffs' largely assert the same facts that purportedly support the FCCPA claim.  The FDUTPA declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  Fla. Stat. § 501.204(1).  "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" Zlotnick v. Premier Sales Group, Inc., 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003)).  "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" Zlotnick, 480 F.3d at 1284 (quoting Millennium Commc'ns & Fulfillment, Inc. v. Office of Att'y Gen., 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000).  "A deceptive practice is one that is likely to mislead consumers.  An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (internal quotations and citations omitted).

It would be inconsistent to find that MERS did not engage in abusive or harassing debt collection practices under the FCCPA, but that the alleged acts constitute "unfair" or "deceptive" acts under the FDUTPA.  See Acosta, 2006 WL

146208, *8 (FDUTPA claim dismissed because the allegations were verbatim as those asserted in dismissed FDCPA and RICO claims).

For the same reasons expressed addressing the FCCPA claim, the Court finds that MERS' pre-suit representations are not "unfair" or "deceptive" as those terms are defined in FDUTPA and that there are no allegations that plaintiffs, as reasonable consumers, relied on MERS' pre-suit communications to their detriment. Based on the filed exemplar mortgage contract, the lenders disclosed MERS' role from the outset of the transaction. Plaintiffs were aware that MERS was a nominee of the lender and that it had foreclosure rights. Further, MERS' pre-suit communications as to its status as "creditor" or "owner" of the promissory note had no effect on the substantial rights of the borrowers, nor was it "unfair" or "deceptive".

While the Court accepts that, even in the best of circumstances, the mortgage foreclosure process may be daunting, confusing and stressful to the average borrower, MERS' role here was not hidden or materially misrepresented. A reasonable consumer in plaintiffs' position would not likely be misled in any material way by the pre-foreclosure communications.[12]

---

[12] Even assuming arguendo the facts as pled establish that MERS engaged in deceptive acts or unfair trade practices, MERS' actions do not qualify as "trade or commerce" under the Act. Under FDUTPA, "trade or commerce" means:

> [A]dvertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. 'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any

**IV.   CONCLUSION**

For the reasons set forth herein, taking plaintiffs' allegations in the Second Amended Complaint as true, along with the referenced attachments and the exemplar mortgage contract, plaintiffs' claims in the Second Amended Complaint are due to be dismissed with prejudice.[13]  Accordingly, it is hereby **ORDERED**:

1.   Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 46) is **GRANTED**. The Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

2.   The Clerk shall enter judgment in favor of Mortgage Electronic

---

nonprofit or not-for-profit person or activity.

Fla. Stat. § 501.203(8).  The Court agrees with MERS that under the plain language of the statute, MERS did not "advertise, solicit, provide, offer or distribute" anything. What MERS did is obtain a legal interest in a note from third party lenders (becoming the "holder" of the note so that it could lawfully foreclose) and then proceeded to foreclosure.  That MERS communicated pre-suit with plaintiffs that it was a "creditor" or "owned" the debt does not fall within the purview of "trade or commerce."

The Court notes that there is case law holding that FDUTPA applies to real estate transactions. See, e.g., Fendrich v. RBF, LLC, 842 So. 2d 1076, 1079-80 (Fla. 4th DCA 2003).  Those cases are distinguishable from the present one as they deal with claims by a consumer against the developer or seller of property for such things as "bait and switch" tactics perpetrated directly against the consumer by the developer or seller, not where, as here, an entity obtains a legal interest as holder of the note and then lawfully seeks to foreclose.  In the present situation, unlike in Fendrich, MERS did not "advertise, solicit, provide, offer or distribute" anything directly to the plaintiffs.

[13]   Plaintiffs have now had two opportunities to amend this complaint. While at oral argument, plaintiffs asked for leave to further amend if the Court dismissed the Second Amended Complaint, they were unable to articulate how further amendment would lead to a viable cause of action.

-19-

Registration Systems, Inc. and against the plaintiffs and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 20th day of July, 2007.

_____
TIMOTHY J. CORRIGAN
United States District Judge

t
Copies: counsel of record